IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 12, 2023 Session

## KIM WILLIAMS v. THE LEWIS PRESERVATION TRUST ET AL.

Appeal from the Chancery Court for Rhea County
No. 18-CV-11127    Melissa Thomas Willis, Judge
_____

No. E2022-01034-COA-R3-CV
_____

In 2012, Robert and Elizabeth Ann Lewis created a revocable trust and transferred thereto their rental property business as well as real estate. Several years later, after Robert was deceased and Elizabeth had become incapacitated, one of the Lewis' sons, acting as Elizabeth's attorney-in-fact, created a new trust with terms different from that of the original. A different Lewis sibling, Kim Williams, disputed the son's authority to create the second trust pursuant to both the terms of the original trust and his power of attorney. Kim Williams claimed, *inter alia*, that the son breached several fiduciary duties in creating the second trust. Following discovery and an unsuccessful mediation, the Chancery Court for Rhea County (the "trial court") denied Ms. Williams' motion for summary judgment and granted the defendants' cross-motion for summary judgment. Ms. Williams appeals. Having reviewed the record and arguments of the parties, we conclude that the trial court's ruling is affirmed in part, reversed in part, and vacated in part, and the case remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; Vacated in Part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Charles Michels, Nashville, Tennessee, for the appellant, Kim Williams.

Stephan R. Wright and Charles W. Gilbreath II, Chattanooga, Tennessee, for the appellees, William Lewis, David C. Lewis, The Lewis Preservation Trust, and The Revocable Family Wealth Trust.

# OPINION

## BACKGROUND

This dispute centers around two trusts involving the Lewis family. Robert Lewis and Elizabeth Ann Lewis, both deceased, had four children, now adults: David, William ("Bill"), Robert Jr. ("JR"), and Kim.[1] While alive, Robert and Elizabeth owned and operated a rental property business which the parties refer to as "Lewis Rentals." They also owned real property associated with that business.

In 2012, Robert and Elizabeth executed several documents. On January 16, 2012, they created the Revocable Family Wealth Trust (or, the "Lewis Living Trust"). All four children were listed as beneficiaries; however, the trust provided that upon distribution, Kim's share must be placed in trust and overseen by her siblings. Robert and Elizabeth were the original trustees of the Lewis Living Trust, while sons David, JR, and Bill were named successor trustees in that order. Robert and Elizabeth's attorney, Norman Sabin, was made special co-trustee. The Lewis Living Trust contained a no-contest clause.

Robert and Elizabeth also executed documents transferring Lewis Rentals and the real property on which the business sits into the Lewis Living Trust. The Lewis Living Trust provided that upon the death of either Robert or Elizabeth, the surviving trustor would make two separate allocations from the trust: the surviving spouse's contributive share would be transferred to the Administrative Survivor's Trust ("Survivor's Trust"), and the deceased spouse's contributive share would be transferred to the "Family Trust." Article Eight of the Lewis Living Trust explained how the Survivor's Trust would be distributed following the death of the surviving spouse:

> **Section 2. Creation, Administration and Distribution of Administrative Survivor's Trust Upon and After Death of Surviving Trustor**
>
> Upon the death of the Surviving Trustor, the Survivor's Trust, including any additions thereto by reason of the Surviving Trustor's death, shall thereafter be known as the "Administrative Survivor's Trust." Our Trustee shall:
>
> a. Pay all expenses, debts, claims and taxes (subject to any provisions of Article Five and Section 1 of Article Fifteen which may be applicable) which are attributable to the Administrative Survivor's Trust;

---

[1] Many of the individuals involved in this case share a last name. As such, we refer to most everyone by their first names only for clarity. No disrespect is intended.

b. Distribute that portion of the Administrative Survivor's Trust consisting of any property effectively appointed pursuant to the provisions of Section 3 (the "Appointed Survivor's Property"); and

c. Distribute the balance of the Administrative Survivor's Trust (the "Survivor's Balance") as provided under Section 4.

    \*        \*        \*

**Section 4. Distribution of Survivor's Balance**

Our Trustee shall distribute the Survivor's Balance as follows:

a. Immediate Distribution of Specific Devises

As soon as practicable after the death of the Surviving Trustor, our Trustee shall make certain distributions from the Survivor's Balance in the manner and amounts and to the persons specified in Article Six[2] of our Trust Agreement. The remainder of the Survivor's Balance, after all the foregoing distributions have been made and including any lapsed gifts (unless otherwise directed under Article Six), shall be held, administered and distributed as set forth below.

b. Distribution of Remainder of Survivor's Balance

Subject to Paragraphs 1. and 2.[3] below, our Trustee shall distribute the remainder of the Survivor's Balance as provided in Article Eleven.

Article Eleven then provides, as relevant, that "[u]pon the death of the Surviving Trustor, our Trustee shall divide the Survivor's Balance . . . into separate shares[,]" with one fourth going to each of the Lewis children.

Also, on January 16, 2012, Elizabeth executed a Property Power of Attorney (the "POA") naming Robert as her attorney-in-fact. David, JR, and Bill were then listed as Robert's successors. On November 2, 2013, Robert wrote a handwritten letter, purportedly to David. Regarding Lewis Rentals, the letter provides, "after I am gone let Bill run it and if [Elizabeth] needs the money give her half of it otherwise let Bill keep most if not all of it." While the parties do not seem to dispute that Robert wrote the letter, it is unsigned.

---

[2] Article Six provided for a $10,000 cash gift to David, JR, and Bill upon the death of the second trustor.

[3] The referenced paragraphs one and two address Generation Skipping Transfer exemptions.

- 3 -

Additionally, Robert made handwritten changes on the Lewis Living Trust in 2014, amending the provisions regarding Kim's distribution. The handwritten changes specifically provide that, as opposed to having her distribution placed in trust as initially indicated, Kim is to be "treated exactly as other three for distribution." Both Robert and Elizabeth signed these handwritten amendments to the Lewis Living Trust; accordingly, the parties agree the handwritten and signed changes on the Lewis Living Trust were effective amendments.

Robert passed away on March 22, 2015. Upon Robert's death, son David became Trustee of the Lewis Living Trust as well as Elizabeth's attorney-in-fact pursuant to the 2012 POA. While the timeline of Elizabeth's decline is unclear from the record, it is undisputed that by the time of Robert's death in 2015, she lacked capacity and was in a memory-care facility.

Following Robert's death, David met with his parents' attorney, Mr. Sabin, to assist with administering the Lewis Living Trust and managing Elizabeth's remaining assets which, per the Lewis Living Trust, were to be placed in the Survivor's Trust. On the advice of Mr. Sabin, David used the POA to create an irrevocable trust, the "Lewis Preservation Trust" (the "Preservation Trust"). The assets of the Survivor's Trust, which contained Elizabeth's contributive share of the Lewis Living Trust, were placed in the Preservation Trust. As such, the Preservation Trust effectively replaced the Survivor's Trust. According to David and Mr. Sabin, this was done primarily to shelter Elizabeth's remaining assets in the event that Elizabeth required government assistance in her final years. On September 3, 2015, a staff member[4] from Mr. Sabin's office emailed all four Lewis children explaining that Mr. Sabin's office was "working on creating an irrevocable trust for [Elizabeth]" incorporating Robert's handwritten changes. The staffer asked that all four beneficiaries sign off on the changes, which they did.

The Preservation Trust was created on October 19, 2015, and signed by David as both Elizabeth's POA and as Trustee of the Preservation Trust. The Preservation Trust included Lewis Rentals, the real property on which Lewis Rentals sits, and a bank account. Bill was also named as a trustee of the Preservation Trust, and both Elizabeth and Bill were made lifetime income beneficiaries of Lewis Rentals. As relevant, the Preservation Trust also provided Bill a right of first refusal to operate and profit from Lewis Rentals:

---

[4] There is great disagreement between the parties regarding whether the staff member at issue held herself out as an attorney before being properly licensed. This controversy does not, however, affect the issues now on appeal.

**Section 3.10 Right of First Refusal Granted to William Henry Lewis**

As soon as practicable after my death, the Trustees shall notify my son, William Henry Lewis in writing, sent by certified mail, return receipt requested, or other verifiable means, of his right of first refusal to accept management of the Rental Properties, associated tenant contracts and any or all cash accounts associated with the Rental Properties and associated tenant contracts (hereinafter "Business Assets"). If William Henry Lewis predeceases me or fails to notify the Trustees in writing of his intention to exercise this right of first refusal within sixty days of receiving notice, this Right of First Refusal shall lapse, and the property shall be distributed in accordance with the articles that follow.

If William Henry Lewis exercises this right of first refusal properly and timely, then the Business Assets shall remain in trust until such time as William Henry Lewis sells or otherwise disposes of all Business Assets, withdraws from management of the Business Assets by written notification to the Trustees and Beneficiaries of the trust, or dies, at which time the trust will terminate. If William Henry Lewis withdraws from management of the Business Assets or dies, Trustee shalt establish a corporate entity (either LLC or Corporation) for the management and control of the Business Assets. Once the entity is established, all Business Assets shall be transferred to the entity and the trust terminated. The membership interested or corporate shares shall then be distributed to the Remainder Beneficiaries pursuant to Article Four.

Article Four of the Preservation Trust then provides that the residue of the trust is to be distributed equally to the four beneficiaries. The Preservation Trust also contained a no-contest clause.

Elizabeth passed away on November 15, 2016. Following her death, the relationship between the siblings deteriorated. Emails contained in the record reflect that David's understanding of the Preservation Trust was that "the business will continue to reside in the Lewis Preservation Trust, and will continue to be run by Bill as long as he is willing to put up with it. If, when, the business is sold, we will all split the proceeds." On the other hand, Kim's position was, essentially, that all of the remaining assets were to be immediately liquidated and split equally between the four siblings. In an email from Kim to her brothers dated October 22, 2017, Kim explained:

1) Waiver of Accounting - As I told Norm and David, I am not waiving my rights of an accounting and as far as I know, I have not received a complete accounting. I am concerned. The biggest issue being the change in the second trust. I need to understand the outright distribution after Mother's passing

and the change in the vesting of the business. I have been advised that the second trust is invalid. Our father's clear intention was that the business be split four ways.

For purposes of summary judgment, the parties agree that Kim did not approve the final accounting of the Lewis Living Trust due to issues with the Preservation Trust, and distributions were not made.

Kim filed suit against the Preservation Trust, the Lewis Living Trust, David, Bill (together, "Respondents" or "Appellees"), and Mr. Sabin[5] on May 14, 2018, seeking a declaration that the Preservation Trust is void and requiring distribution of all property as set forth in the Lewis Living Trust. Kim also requested attorney's fees and alleged various breaches of fiduciary duty primarily by David. Kim later non-suited the claims against Mr. Sabin. Kim filed an amended complaint on June 22, 2018, claiming that 1) the terms of the Lewis Living Trust did not allow the creation of the Preservation Trust because David used a general power of appointment to create same; 2) David breached his fiduciary duty of good faith in creating the Preservation Trust and naming Bill a trustee; and 3) David breached his fiduciary duties by failing to produce accountings for the Preservation Trust and the Lewis Living Trust. Kim asked that the Preservation Trust be deemed null and void, that David produce accountings for both trusts, that all assets in the Preservation Trust be sold and used to pay Kim's attorney's fees and then distributed equally between the siblings, and that the trial court deem Kim's action as falling within the protection of Tennessee Code Annotated section 35-15-1014 so as not to trigger the no-contest clause of either trust.

Respondents answered on July 9, 2018. Among other things, they urged that David acted at all times in good faith and in the best interests of Elizabeth and the beneficiaries and in reliance on sound counsel from Mr. Sabin. Respondents asserted a counterclaim for declaratory judgment against Kim, asking that the trial court rule the Preservation Trust valid. Further, Respondents asked that the no-contest clauses in both the Lewis Living Trust and the Preservation Trust be enforced so as to exclude Kim from any distributions.

Kim filed her first motion for summary judgment on August 22, 2018, arguing "that there is no genuine issue of material fact in regard to any reasonable interpretation of the [Lewis Living Trust]." First, Kim urged that the November 2, 2013 letter purportedly written by Robert and stating that Bill should be allowed to run Lewis Rentals was not an appropriate basis upon which to amend the Lewis Living Trust or create the Preservation Trust. Kim also pointed out that per the Lewis Living Trust, amendments were required to be in writing, signed by the Trustor, and delivered to the Trustees. Relying on Article Four

---

[5] Mr. Sabin passed away during the pendency of this case and his estate was substituted. None of the claims against Mr. Sabin's estate are at issue in this appeal, however, and are only mentioned for context.

of the Lewis Living Trust, Kim further argued that David used the POA to exercise a prohibited general power of appointment over Elizabeth's assets. Overall, Kim maintained that David and Bill violated their fiduciary duties when David created the Preservation Trust and Bill assumed management of Lewis Rentals. According to Kim, "Bill Lewis and David Lewis acted solely in Bill Lewis' interest by allowing Bill Lewis to operate, receive income from, and maintain the assets held in the Preservation Trust until his death or until he terminates the Preservation Trust. Each of these acts constitutes a breach of the duties of good faith, impartiality, and loyalty." In response, Respondents argued that David did not create the Preservation Trust by amending the Lewis Living Trust but rather that he used an undisputedly valid POA to create an irrevocable trust, effectively safeguarding Elizabeth's assets following Robert's death. Respondents further urged that David did not exercise a power of appointment in creating the Preservation Trust and that David at all times acted in accordance with his fiduciary duties. Respondents pointed out that Kim made no allegations regarding Bill other than that he received a lifetime income interest in and right to manage Lewis Rentals. Regarding the accounting, Respondents claimed that David had provided Kim with four separate accountings between December of 2016 and May of 2017.

The trial court denied Kim's motion in an order entered February 14, 2019, concluding that David had the authority as Elizabeth's attorney-in-fact to create the Preservation Trust:

> Examining the paramount issue of whether Respondent, David Lewis, acted outside his authority, Petitioner argues that the Lewis Living Trust cannot be amended by a Power of Attorney by way of an act that is considered a power of appointment and cites Tenn. Code Ann. § 35-6-108(c)(2). However, on January 16, 2012, Elizabeth Lewis executed a Power of Attorney, naming Robert Lewis as her attorney in fact, and David Lewis as successor attorney in fact. Pursuant to said Power of Attorney David Lewis acted as Elizabeth Lewis' attorney in fact, and through the authority granted to him in Sections 11 and 12 of said Power of Attorney. Specifically, Section 12 (a) of the Power of Attorney states:
>
> > My Agent shall have the power to establish any trust with my assets for my benefit and the benefit of my issue and any other of my dependents, or one or more of us, upon such terms as my Agent determines are necessary or proper after due consideration of the estate plan I have in place and of my known desires; transfer any asset in which I have an interest to any such trust or to any such trust that I have created; and exercise in whole or in part, release, or let lapse any power I may have as an individual and not as a fiduciary under any trust whether or not created by me. My Agent may be Trustee of any trust established by my Agent.

The Lewis Living Trust instrument expressly preserved the authority of Elizabeth Lewis—as Surviving Trustor—to manage and dispose of those assets at her discretion during her lifetime. Specifically, the Lewis Living Trust Article 4, Section 3.b. provides that:

> The Surviving Trustor may at any time or times amend or revoke any provision of the Survivor's Trust, in whole or in part, as to the Surviving Trustor's Contributive Share of our Trust Estate and any portion of the Deceased Trustor's Contributive Share subject to a general power of appointment by the Surviving Trustor.

> The record reflects the date of death for Elizabeth Lewis to be November 15, 2016. The creation of the Preservation Trust on October 19, 2015, was during her lifetime, and from her contributive share. As such, the action of David Lewis, vested in him through the Power of Attorney dated January 16, 2012, resulted in the appropriate exercise of authority under the Lewis Living Trust.

The trial court denied summary judgment on the issue of whether Kim should be excluded as a beneficiary pursuant to the no-contest clauses, finding that under section 35-15-1014, "the intent of Petitioner and the fiduciary are questions of fact as is the 'good faith' of the Trustee."

Following the trial court's February 2019 order, the parties continued with discovery and engaged in several disputes not relevant to the issues on appeal. On February 3, 2020, the trial court entered an order finding that the "accounting" offered by Respondents thus far was insufficient and ordered them to supplement same. The trial court also gave Kim permission to file her second amended complaint, which she did on February 18, 2020.

In the second amended complaint, which is the operative complaint for purposes of this appeal, Kim re-named Mr. Sabin as a defendant and alleged several causes of action against him. As to the other defendants, Kim claimed that 1) the terms of the Lewis Living Trust did not allow for the creation of the Preservation Trust, and use of Robert's unsigned letter to alter Elizabeth's contributive share was inappropriate; 2) David violated the terms of the Lewis Living Trust by exercising a general power of appointment to create the Preservation Trust; 3) David breached his duties under the POA because the Preservation Trust was not part of Elizabeth's estate plan or her known desires; 4) the Preservation Trust's creation increased the applicable tax burden; and 5) David breached his various fiduciary duties by creating the Preservation Trust and positioning Bill to run Lewis Rentals

indefinitely. Kim also sought a declaration that she could not be removed as a beneficiary under the no-contest clauses based upon Tennessee Code Annotated section 35-15-1014.

Respondents filed a cross-motion for summary judgment on October 18, 2021, arguing that the "claims against David and [Bill] Lewis are baseless and should be dismissed[.]" Generally, the brothers claimed that Kim had "violated the no-contest clause of both the Lewis Living Trust and the Preservation Trust"; "failed to put forth any facts or arguments giving rise to a claim, of any kind, let alone for any alleged breach"; and that David properly had used the POA to create the Preservation Trust. The trial court ultimately agreed with Respondents and entered an order on July 5, 2022, holding that "the acts of amending the Lewis Living Trust in creating of [sic] the Preservation Trust did not violate any fiduciary duties David Lewis owed to any beneficiary or to his mother, Elizabeth Lewis." The court enforced the no-contest provisions of the trusts, finding that none of the safe harbor provisions exempting challenges to a trust, found at Tennessee Code Annotated section 35-15-1014, apply under the circumstances. The trial court certified its order as final pursuant to Tennessee Rule of Civil Procedure 54.02.

Kim appealed to this Court.

### ISSUES

Kim (hereinafter "Appellant") raises the following issues on appeal, which are restated slightly:

1. Whether the trial court erred in finding that Appellant forfeited any interest in the Lewis Living Trust and/or the Preservation Trust by filing suit.

2. Whether the trial court erred in finding that David Lewis did not breach his duties as Elizabeth Lewis' attorney-in-fact in establishing the terms of the Preservation Trust.

3. Whether the trial court erred in finding that David Lewis did not breach any fiduciary duties in administering the Lewis Living Trust and the Preservation Trust.

4. Whether the trial court erred in finding that David Lewis' actions in establishing the terms of the Preservation Trust did not constitute the exercise of a power of appointment.

5. Whether the trial court erred in granting summary judgment to Respondents without considering the evidence in the light most favorable to the non-moving party.

6. Whether the trial court erred in denying Appellant's request that both David Lewis and Bill Lewis make the Lewis Living Trust and/or Preservation Trust whole and grant Appellant her attorney's fees.

In their posture as appellees, Respondents raise the additional issue of whether this appeal is frivolous and warrants an award of their appellate attorney's fees.

## STANDARD OF REVIEW

This case was resolved by summary judgment. A trial court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The propriety of a trial court's summary judgment decision presents a question of law, which we review de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). As our Supreme Court has instructed,

> when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, "to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, set forth specific facts . . . showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks and brackets in original omitted). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects*, 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265).

## DISCUSSION

*Claims against Bill Lewis*

As a threshold matter, we address the trial court's dismissal of all claims against Bill Lewis. The trial court found that Bill "accepted employment to run Lewis Rentals, and as he did not have any management over the trusts, Respondents' Motion for Summary Judgment as to all the claims against [Bill] are granted." We agree and affirm the trial court's dismissal of any claims against Bill. Although Bill was named as a defendant in all three of Appellant's complaints, the operative complaint is devoid of sufficient allegations regarding how Bill breached or violated any legal duties. Rather, Bill's involvement in the case has been that David, in creating the Preservation Trust, gave Bill a lifetime right to manage and draw income from Lewis Rentals. The gravamen of Appellant's case is that David lacked the requisite authority to create the Preservation Trust as Elizabeth's attorney-in-fact and violated his fiduciary duties as trustee. Appellant states in her brief that "David Lewis and [Bill] Lewis, as Trustees, did not act in the best interest of all the beneficiaries of the Lewis Living Trust" and that Bill was acting as a trustee of the Lewis Living Trust at the time the Preservation Trust was executed. Nonetheless, Bill was a successor trustee of the Lewis Living Trust when the Preservation Trust was created, and David, not Bill, signed the Preservation Trust as Elizabeth's attorney-in-fact.

More importantly, Appellant does not argue in her principal appellate brief that the trial court erred in dismissing any claims against Bill. Appellant's issues instead focus on the trial court's rulings about David and his purported breaches of duty. Consequently, even to the extent that Appellant did properly plead any claims against Bill in the lower court, any such theories have been abandoned and are waived on appeal.

*The Preservation Trust*

Appellant's primary contention on appeal is that the trial court erred in concluding that David did not breach his fiduciary duties as either attorney-in-fact or trustee by creating the Preservation Trust. This argument is multi-faceted. For one, Appellant maintains that David breached his duties as Elizabeth's attorney-in-fact by giving Bill control of Lewis Rentals; she also maintains that David breached his duties of good faith, impartiality, and loyalty, as well as his duty to provide accountings, as trustee of both trusts. Appellant also claims that David exercised a prohibited "general power of appointment" to create the Preservation Trust.

Distilled to its essence, Appellant's argument is that David lacked the authority, per the terms of the Lewis Living Trust and the POA, to create the Preservation Trust. The Tennessee Uniform Trust Code "governs the duties and powers of a trustee or any other fiduciary under this chapter, relations among trustees and such other fiduciaries, and the

- 11 -

rights and interests of a beneficiary." Tenn. Code Ann. § 35-15-105(a). However, "[t]he terms of a trust may expand, restrict, eliminate, or otherwise vary the duties and powers of a trustee, any such other fiduciary, relations among any of them, and the rights and interests of a beneficiary." *Id.* Terms of a trust "prevail over" provisions of the Code except, *inter alia*, "the duty of a trustee to act in accordance with the terms and purposes of the trust and the interests of the beneficiaries[.]" *Id.* § 35-15-105(b)(2); *see also* Tenn. Code Ann. § 35-15-801 et seq. (providing that trustees shall administer the trust in accordance with its terms and the interests of beneficiaries, observing duties of loyalty and impartiality).

> Trust instruments are to be construed in much the same way we interpret contracts or wills. *Marks* [*v. Southern Trust Co.*, 310 S.W.2d 435,] 437-38 [Tenn. 1958]. "[T]he important thing in the construction of the trust instrument is to determine the intention of the settlor as evidenced by all the provisions of the instrument, giving no portion any greater emphasis than any other." *Id.*; *see also* Tenn. Code Ann. § 35-15-112 (2015) ("The rules of construction that apply in this state to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property."); Tenn. Code Ann. § 35-15-101, 2013 Restated Comments ("It is a primary objective of the Tennessee trust statutes that a settlor's intent be the lodestar by which a trust is interpreted....").

*Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 261 (Tenn. 2017).

Likewise, a power of attorney "should be construed using the same rules of construction generally applicable to contracts and other written instruments, except to the extent that the fiduciary relationship between the principal and the agent requires otherwise." *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 749–50 (Tenn. 2007) (footnote omitted) (citing *In re Trust of Jameison*, 8 P.3d 83, 87 (Mont. 2000)); *see also Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (noting that an attorney-in-fact is subject to fiduciary duties of utmost good faith, loyalty, and honesty).

Therefore, we resolve this dispute by considering David's fiduciary duties against the backdrop of the terms of the Lewis Living Trust and the POA. Turning first to the terms of the Lewis Living Trust, Article Four, Section Three provides that Elizabeth could have amended the Survivor's Trust as to her contributive share, Lewis Rentals, following her husband's death:

**b. Power to Revoke and Amend After Death of First Trustor**

Upon the death of the first of us, the Family Trust and the Marital Trust, if any, and any sub-trusts created under the Family Trust and Marital Trust, if

any, shall become irrevocable and shall not be subject to amendment or revocation. The Surviving Trustor may at any time or times amend or revoke any provision of the Survivor's Trust, in whole or in part, as to the Surviving Trustor's Contributive Share of our Trust Estate and any portion of the Deceased Trustor's Contributive Share subject to a general power of appointment by the Surviving Trustor.

As such, it is undisputed that Elizabeth had the power to change the disposition of her contributive share, and it is likewise undisputed that Lewis Rentals constituted Elizabeth's contributive share. Consequently, had Elizabeth been competent in 2015 and transferred Lewis Rentals to the Preservation Trust by her own hand, there is no dispute that such action would have been proper. Nonetheless, Lewis Rentals was placed in the Preservation Trust not by Elizabeth herself, but by David acting as her attorney-in-fact. Regarding this situation, Article Four, Section Four of the Lewis Living Trust explains:

**Section 4. Exercise of Trustors' Rights and Powers by Others**

Any right or power that either Trustor may exercise under the terms of this Trust Agreement other than (i) an amendment by Will, or (ii) any right or power that would constitute a general power of appointment if held by an Attorney-in-Fact, over such Trustor's respective Contributive Share may be exercised for and on behalf of such Trustor by any Attorney-in-Fact who, at the time of the exercise, is duly appointed and acting for such Trustor under a valid and enforceable Power of Attorney executed by such Trustor. Only if no such Attorney-in-Fact is then available may a legal representative appointed by a court of competent jurisdiction exercise such right or power.

Other than as provided in this Section, the powers of any Trustor under our Trust Agreement are personal to such Trustor and may not be exercised by any other person or entity.

Inasmuch as an attorney-in-fact may exercise "any right or power that either Trustor may exercise" under the terms of the Lewis Living Trust, the foregoing provisions together establish that David, subject to two exceptions, had authority as Elizabeth's attorney-in-fact to "amend or revoke any provision of the Survivor's Trust, in whole or in part, as to the Surviving Trustor's Contributive Share." This authority, however, is not carte blanche. Rather, "[a] settlor's powers with respect to revocation, amendment, or distribution of trust property may be exercised by an agent under a power of attorney only to the extent expressly authorized by the terms of the trust or the power." Tenn. Code Ann. § 35-15-602(e); *see also Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 496 (Tenn. Ct. App. 2008) (quoting *Cabany v. Mayfield Rehab. & Special Care Ctr.*, No. M2006-00594-COA-R3-CV, 2007 WL 3445550, at *4 (Tenn. Ct. App. Nov. 15,

- 13 -

2007) ("'[T]he language of a power of attorney determines the extent of the power that the power of attorney conveys'").  Accordingly, David was limited not only by terms of the Lewis Living Trust and his fiduciary duties, but also by the terms of the POA and those attendant fiduciary duties.  And here, Article One, Section Twelve of the POA specifically addresses David's power to create and modify trusts on Elizabeth's behalf:

### a. Establishment of Trusts

My Agent shall have the power to establish any trust with my assets for my benefit and the benefit of my issue and any other of my dependents, or one or more of us, upon such terms as my Agent determines are necessary or proper after due consideration of the estate plan I have in place and of my known desires; transfer any asset in which I have an interest to any such trust or to any such trust that I have created; and exercise in whole or in part, release, or let lapse any power I may have as an individual and not as a fiduciary under any trust whether or not created by me. My Agent may be Trustee of any trust established by my Agent.

### b. Amend, Revoke or Exercise Powers Over Existing Trusts

I give my Agent the power to amend, revoke and/or exercise any and all other powers I could exercise under the terms of any trust of which I am a Trustor.

Based on all of the foregoing, we reach several conclusions.  First, the trial court correctly determined that, generally, David had authority to both amend the Lewis Living Trust and/or create the Preservation Trust as Elizabeth's attorney-in-fact.  The plain language of the Lewis Living Trust reflects that David could, through the POA, take any action that Elizabeth could take "other than (i) an amendment by Will, or (ii) any right or power that would constitute a general power of appointment[.]"  And it is undisputed that Elizabeth would have had the right to create the Preservation Trust and place her contributive share, Lewis Rentals, in same.  Moreover, nothing in the record suggests that just the creation of the Preservation Trust itself was contrary to Elizabeth's best interests or those of the beneficiaries.  Rather, as explained by Mr. Sabin several times, the Preservation Trust was created to shelter Elizabeth's assets from Medicaid recovery in the event that she needed government assistance in her final years.  This decision makes sense in light of the undisputed fact that Elizabeth's health was rapidly deteriorating by 2015 and she was living in a memory-care facility.  In the same vein, it follows that it was in Elizabeth's best interests for David to make her an income beneficiary under the Preservation Trust and to allow Bill to run Lewis Rentals during Elizabeth's lifetime.  This way, the business could continue generating income for Elizabeth's care.

Further, we are unpersuaded by Appellant's assertion that David was actually using a general power of appointment in creating the Preservation Trust. The Lewis Living Trust does not define "power of appointment"; however, under the Tennessee Uniform Trust Code, a "'[p]ower of [a]ppointment' means":

(A) An inter vivos or testamentary power to direct the disposition of trust property, other than a distribution decision made by a trustee or other fiduciary to a beneficiary;

(B) Powers of appointment are held by the person to whom such power has been given, and not by a settlor in that person's capacity as settlor[.]

Tenn. Code Ann. § 35-15-103(21); *see also Power of Appointment*, *Black's Law Dictionary* (11th ed. 2019) ("[G]eneral power of appointment. (18c) A power of appointment by which the donee can appoint — that is, dispose of the donor's property — in favor of anyone at all, including oneself or one's own estate; esp., a power that authorizes the alienation of a fee to any alienee."). Appellant cites no Tennessee case law, nor did our research reveal any, construing section 35-15-103(21) or suggesting that the circumstances at issue amount to a general power of appointment. And while Appellant cites section 35-15-103(21)(A) in her appellate brief, she omits the second portion of the sentence—"other than a distribution decision made by a trustee or other fiduciary to a beneficiary." *Id.* § 35-15-103(21)(A). Although the terms of the Lewis Living Trust and the POA give David undeniably wide latitude, Appellant has not demonstrated that David's authority is so broad as to amount to the power to dispose of Elizabeth's assets in favor of any one at all. Appellant has not established that David exercised a general power of appointment under these circumstances.

To sum up thus far, the trial court correctly concluded that David had authority to amend or revoke the Lewis Living Trust using the POA, inasmuch as David did not use "(i) an amendment by Will, or (ii) any right or power that would constitute a general power of appointment" to do so. And based on the undisputed facts, there is no basis upon which to find that creating the Preservation Trust itself was a breach of any of David's fiduciary duties. Appellant has not established that allowing Bill to run Lewis Rentals during Elizabeth's lifetime somehow violated David's fiduciary duties, as this was to Elizabeth's benefit as a lifetime income beneficiary. Logic dictates that keeping Lewis Rentals profitable during Elizabeth's lifetime was in both Elizabeth's, and the beneficiaries', best interests, and Appellant presents no evidence otherwise.[6]

---

[6] In the trial court, Appellant argued that creation of the Preservation Trust somehow increased the tax burden on Elizabeth's assets. This argument is not addressed in Appellant's brief to this Court. It is thus waived.

Nonetheless, Appellant also maintains that David violated his fiduciary duties as attorney-in-fact and trustee by giving Bill a *lifetime* right to draw income from Lewis Rentals, as well as the right to sell or otherwise dispose of the business and its assets. Appellant urges that David did not use his role as attorney-in-fact merely to create the Preservation Trust and shelter Elizabeth's assets, but rather that David went much further. Although we disagree that the Preservation Trust is entirely invalid, we agree with Appellant that the portion of the Preservation Trust providing Bill lifetime income rights in Lewis Rentals warrants closer examination.[7]

This issue stems from the following provision in Article Three, Section 3.10 of the Preservation Trust explaining Bill's right of first refusal to Lewis Rentals:

> If [Bill] Lewis exercises this right of first refusal properly and timely, then the Business Assets shall remain in trust until such time as [Bill] Lewis sells or otherwise disposes of all Business Assets, withdraws from management of the Business Assets by written notification to the Trustees and Beneficiaries of the trust, or dies, at which time the trust will terminate. If [Bill] Lewis withdraws from management of the Business Assets or dies, Trustee shall establish a corporate entity (either LLC or Corporation) for the management and control of the Business Assets. Once the entity is established, all Business Assets shall be transferred to the entity and the trust terminated. The membership interested or corporate shares shall then be distributed to the Remainder Beneficiaries pursuant to Article Four.

As we understand this provision, Bill has the right to manage and draw income from Lewis Rentals for as long as he so chooses, and he may "sell[] or otherwise dispose[] of" Lewis Rentals and/or the business assets. The foregoing provision does not clearly state that in the event Bill "sells or otherwise disposes of" the business and/or its assets, the profits are to be split four ways between the siblings. While there are clear requirements following Bill's withdrawal from management or death, the above provision does not necessarily explain what happens if or when Bill "sells or otherwise disposes of" Lewis Rentals; at the very least, Bill's authority to sell or otherwise dispose of Lewis Rentals is ambiguous. And, crucial to the issues on appeal, this arrangement is quite different from Elizabeth's original estate plan as laid out in the Lewis Living Trust, which provided that upon the surviving spouse's death, his or her remaining assets would be distributed in equal fourths to the Lewis children.

---

[7] Both the Lewis Living Trust and the Preservation Trust contain severability clauses.

Again, David used his authority as Elizabeth's attorney-in-fact to fashion the foregoing arrangement. However, David was limited by the POA which provides as relevant:

> My Agent shall have the power to establish any trust with my assets for my benefit and the benefit of my issue and any other of my dependents, or one or more of us, *upon such terms as my Agent determines are necessary or proper after due consideration of the estate plan I have in place and of my known desires*[.]

(Emphasis added). "Due consideration" of Elizabeth's estate plan and her "known desires" is where the problem arises for David. Appellant correctly points out that the record is devoid of any evidence that Elizabeth planned or desired for Bill to run Lewis Rentals for an undetermined amount of time, possibly until his death, with the potential that the other siblings receive nothing during their lifetimes. The record reflects that Robert, as opposed to Elizabeth, suggested that Bill should manage Lewis Rentals and profit from same. It is undisputed, however, that Lewis Rentals was Elizabeth's contributive share and that David transferred Lewis Rentals to the Preservation Trust as *Elizabeth's* attorney-in-fact, not Robert's. David was thus required to consider *Elizabeth's* estate plan and known desires, not Robert's; however, nothing in Elizabeth's estate plan prior to the Preservation Trust indicated that Bill should continue operating and profiting from Lewis Rentals indefinitely.

Given the significant benefits afforded to one sibling, an issue of fact remains regarding whether David has administered the trusts in the interests of all beneficiaries. *See* Tenn. Code Ann. § 35-15-801; *see also id.* § 35-15-803 ("If a trust has two (2) or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."). Considering the fairly advanced age of the beneficiaries, there is a distinct possibility that some of them will receive nothing at all from Lewis Rentals in the event Bill outlives them, or, if he "sells or otherwise disposes of" the business.[8]

Appellant is not the only sibling questioning the disposition of Lewis Rentals as provided in the Preservation Trust. The fourth Lewis sibling, JR, who is largely uninvolved in this litigation, testified about his reaction to the Preservation Trust. In his deposition, JR stated that he was surprised to find out about Bill's expansive rights to Lewis Rentals:

> [A.] But, at any rate, it was all around the time that this Preservation Trust was being done and I remember specifically one of the meetings we had, Bill and David and I and Norm were there, and Norm started out the meeting with

---

[8] To be clear, Appellant does not claim that Bill should not have received a salary for his job managing Lewis Rentals.

- 17 -

something to the effect that it seems -- well, your father has left the commercial business to Bill.

And I said wait, stop right there, Norm. That's not true. And, you know, and Bill and David agreed with me. I said -- I said, you know, Bill -- Bill, I'm happy for Bill to get paid while he's running the business, but the business is going to be liquidated and split four ways. It's not Bill's business. And he backed off of that.

Q. Was it a situation where he misspoke?

A. Well, maybe, maybe, I don't know. He always seemed to be pushing this idea that somehow the commercial property had been left to Bill, which was wrong.

Q. Left to Bill to run perhaps?

A. Left to Bill. He didn't put any other qualifiers on it.

Q. Okay. All right.

A. That was my problem. Okay.

JR further testified:

[A.] [I]t was a shock to me, I guess you would call it a shock, a surprise at least, that there was anything about the property, and the running of the property, or who had say-so as far as selling the property. It was a surprise to me that any of that was in the Preservation Trust. That was not the purpose of the Preservation Trust. And it -- it was just a sneaky attempt to get done what they wanted to get done and -- instead of bringing everybody else in and getting an agreement on it. And I did not appreciate it at all, but I did have a conversation with Bill and David afterwards, you know, when I got that and we came to a meeting of the minds and I finally agree[d] to sign off.

While JR's testimony is not dispositive as to Elizabeth's estate plan and known desires, it lends credence to Appellant's contention that there is no proof Elizabeth foresaw, much less desired, the current arrangement.

Considering all of the foregoing, genuine issues of material fact remain, precluding summary judgment on Appellant's breach of fiduciary duty claims.  Specifically, whether David, as Elizabeth's attorney-in-fact, gave due consideration to Elizabeth's estate plan

and known desires by giving Bill a lifetime right to operate Lewis Rentals and keep the profits therefrom. The same question exists regarding Bill's broad and ambiguous right under the Preservation Trust to "sell[] or otherwise dispose[] of" Lewis Rentals. Insofar as it is unclear whether David acted within the confines of the POA, a genuine issue of material fact remains regarding whether he breached his fiduciary duties as Elizabeth's attorney-in-fact. Likewise, David is subject to fiduciary duties as trustee of both the Lewis Living Trust and the Preservation Trust. Appellant urges in her brief that David violated his duties of "good faith, impartiality, and loyalty" and that she should be granted summary judgment. While we disagree that Appellant is entitled to summary judgment, we agree that the trial court erred in granting summary judgment to David on these claims.

The final argument Appellant makes regarding David's potential breaches of fiduciary duty is that he has consistently failed to provide Appellant with sufficient accountings for both trusts. The trial court did not fully reach this issue, explaining that

> [n]otwithstanding David Lewis' legal authority to amend the Lewis Living Trust and create the Preservation Trust, there is a disputed issue of material fact precluding summary judgment as to whether David Lewis properly provided an accounting. This issue is now moot, however, because of the violation of the no-contest provisions, as further explained below.

In light of our holding that the trial court improperly granted David summary judgment, the trial court's ruling on his failure to provide accounting must be vacated. The trial court must reconsider this issue on remand.

*No-contest provisions & Attorney's fees*

Appellant also argues that the trial court erred in applying both trusts' no-contest provisions and determining that Appellant is "no longer a beneficiary of either Trust" and "no longer has standing to challenge any action of any trustee, nor any right to review any Trust accountings." Tennessee Code Annotated section 35-15-1014 provides:

> (a) For the purposes of this section, "no-contest provision" includes a "no-contest provision," "in terrorem provision" or "forfeiture provision" of a trust instrument. A "no-contest provision" means a provision that, if given effect, would reduce or eliminate the interest of any beneficiary of such trust who, directly or indirectly, initiates or otherwise pursues:
>
> (1) Any action to contest the validity of the trust or the terms of the trust;
>
> (2) Any action to set aside or vary the terms of the trust;

(3) Any action to challenge the acts of the trustee or other fiduciary of the trust in the performance of the trustee's or other fiduciary's duties as described in the terms of the trust; or

(4) Any other act or proceedings to frustrate or defeat the settlor's intent as expressed in the terms of the trust.

(b) Regardless of whether or not the beneficiary sought, received or relied upon legal counsel, a no-contest provision shall be enforceable according to the express terms of the no-contest provision without regard to the beneficiary's good or bad faith in taking the action that would justify the complete or partial forfeiture of the beneficiary's interest in the trust under the terms of the no-contest provision unless probable cause exists for the beneficiary taking such action on the grounds of:

(1) Fraud;

(2) Duress;

(3) Revocation;

(4) Lack of testamentary capacity;

(5) Undue influence;

(6) Mistake;

(7) Forgery; or

(8) Irregularity in the execution of the trust instrument.

Per the restated comments, "[t]his section was included in the Tennessee Uniform Trust Code in furtherance of its overriding policy and goal of carrying out a settlor's intent, as well as providing settlors with the freedom to dispose of their assets to whom and in the manner they wish, all to the greatest extent constitutionally allowable."  Nonetheless, Appellant urges that her claims fall under a "safe harbor" provision of the statute:

(c) Subsection (b) shall not apply to:

(1) Any action brought solely to challenge the acts of the trustee or other fiduciary of the trust to the extent that the trustee or other fiduciary has committed a breach of fiduciary duties or breach of trust;

- 20 -

\* \* \*

(5) Any action brought by a beneficiary or on behalf of any such beneficiary
for a construction or interpretation of the terms of the trust[.]

Tenn. Code Ann. § 35-15-1014(c)(1), (5). Respondents urge that Appellant's claims do not fall under the protection of section 35-15-1014 because her ultimate goal has always been dissolution of the Preservation Trust. However, voiding the Preservation Trust is part of the relief sought by Appellant, not the claim itself. It has always been the gravamen of Appellant's case that David acted outside the bounds of his authority and fiduciary duties in creating the second trust. Moreover, as we have already determined, a genuine dispute of material fact exists regarding whether David "has committed a breach of fiduciary duties or breach of trust." Tenn. Code Ann. § 35-15-1014(c)(1). Consequently, we deem it prudent to vacate the trial court's decision enforcing the no-contest provisions against Appellant.

The final issues on appeal involve attorney's fees, both at the trial level and on appeal. Regarding fees incurred below, the trial court concluded that

[i]n this case . . . it is appropriate to award Respondents' reimbursement of their attorneys' fees and costs, which shall be paid over into the Lewis Living Trust or Preservation Trust as applicable; however, the Court declines to find that [Appellant] shall be individually responsible for the Respondents' attorneys' fees. As previously ruled, the Trustee has discretion to pay attorneys' fees from the Trusts and this Court does not need to approve the amount of the fees paid.

Like most of the trial court's order, we deem it prudent to vacate this ruling and remand for further consideration in light of the fact that some of Appellant's claims survive. Depending upon the outcome of those claims on remand, the trial court may reconsider the issue of attorney's fees if raised by the parties.

Respondents also urge that this appeal is frivolous and that they should be awarded their appellate attorney's fees. *See* Tenn. Code Ann. § 27-1-122; *see also Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009) (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 180–81 (Tenn. Ct. App. 2006) ("The decision to award damages for the filing of a frivolous appeal rests solely in the discretion of this Court . . . . '[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals.'"). Here, we cannot conclude that this appeal was groundless. Thus, exercising our discretion, we decline to award Respondents their attorney's fees on appeal.

To summarize, we affirm the trial court's dismissal of any claims against Bill, as those claims were not properly developed in the lower court and not pursued on appeal. We also affirm the trial court's conclusion and grant of summary judgment regarding David's right to create the Preservation Trust as Elizabeth's attorney-in-fact. We reverse the trial court's grant of summary judgment, however, regarding Appellant's claim that David breached his fiduciary duties as attorney-in-fact and trustee by providing Bill with a lifetime income right to Lewis Rentals, as well as the unqualified right to sell or otherwise dispose of Lewis Rentals. In light of this conclusion, the trial court's rulings about David's alleged failure to provide accounting, the no-contest provisions, and attorney's fees are vacated. This case is remanded to the trial court for proceedings consistent with this opinion.

## CONCLUSION

The ruling of the Chancery Court for Rhea County is affirmed in part, reversed in part, and vacated in part, and the case remanded to the trial court for proceedings consistent with this opinion. Costs on appeal are assessed equally to appellant, Kim Williams, and appellee, David Lewis.

_____
KRISTI M. DAVIS, JUDGE